United States District Court
Southern District of Texas
**ENTERED**
October 31, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Quintina Richardson,<br>*Plaintiff,* | § <br> § <br> § | |
| v. | § <br> § | Civil Action H-18-01707 |
| United Airlines, Inc.,<br>*Defendant.* | § <br> § <br> § | |

## Memorandum and Recommendation

Pending before the court is United Airlines's motion for summary judgment (D.E. 77) and two motions to strike. (D.E. 88; D.E. 91.) These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). For the reasons detailed below, the court recommends that the motion for summary judgment be GRANTED. The motions to strike are DENIED as MOOT.

## I.   BACKGROUND

Plaintiff Quintina Richardson is an African American woman who worked for United Airlines from November 1997 to December 2015. Following her termination, Richardson filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and later sued under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. She alleges racial and gender discrimination, retaliation, and hostile work environment. United Airlines moves for summary judgment.

Between January 2014 and December 2015, Richardson worked as a Customer Service Agent in the Terminal B South Service Center of George Bush Intercontinental Airport under Assistant Directors Brent Cancienne and Andy Jamison. (D.E. 87 at 2–3.) Richardson provided flight assistance and accommodations to passengers traveling with United Airlines. (D.E. 87 at 2.) Richard Pinto, Trozie Jordan, and Alexa Hernandez also managed the Terminal B South Service Center. *Id.* Richardson's complaint and response to the summary judgment motion both describe several incidents that she believes prove her claims.

In February 2014, Richardson was working in Terminal E when she learned that her uncle died. (D.E. 87 at 16.) Richardson called Cancienne and asked to leave early under the United Airlines Authorized Unpaid Time Off policy. *Id.* Cancienne advised Richardson that he would not consider her request to leave early unless she gave him a copy of her uncle's death certificate. *Id.*

In February 2015, Richardson was working as a gate agent in Terminal B under supervisor Pinto. (D.E. 87 at 21.) When several connecting passengers were delayed in a neighboring gate, Richardson agreed to hold her gate open so that those passengers could make their next flight. (D.E. 87 at 22.) United Airlines policy allowed for gate agents to use their discretion in such instances. *Id.* Richardson called Pinto to inform him of her decision and announced it over the radio. *Id.* A United

2

Airlines employee unacquainted with Richardson approached the gate and berated Richardson for holding the plane. *Id.*

Later that spring, Richardson asked supervisor Gwen Taylor for a shift adjustment to give Richardson time to renew her required security badges. (D.E. 87 at 24.) Taylor denied this request. *Id.* Cancienne then denied her request for a temporary badge. (D.E. 87 at 25.) After Cancienne accused her of working with expired badges, Richardson filed complaints with her union and with Cancienne's manager. *Id.*

In April 2015, a witness informed supervisor Taylor that a passenger shoved Richardson during an altercation. (D.E. 87 at 26.) Richardson filed an incident report with United Airlines. (D.E. 87 at 57–58; D.E. 77-1 at 13–16.) Taylor could not confirm that Richardson was pushed. (D.E. 77-1 at 12.)

On August 3, 2015, there was an incident between Richardson and a caucasian co-worker, Ellen Johnson. Both women were working at the service center when Johnson directed a customer to Richardson's station. (D.E. 87 at 27.) Richardson was fixing her printer and was unable to assist a customer at that time. *Id.* After all customers left the service area, Richardson approached Johnson and introduced herself. (D.E. 87 at 27–28.) Richardson explained that she had been working on her printer and did not appreciate Johnson sending a customer to her as if she were not busy. (D.E. 77-1 at 17–20.) She believed that Johnson's behavior and tone of voice

were unprofessional and rude and informed Johnson that she would report the conduct to management if it continued. (D.E. 77-1 at 17.) While Johnson walked away, her shoulder bumped into Richardson. (D.E. 77-1 at 17–20.) Both Johnson and Richardson reported the incident to the United Airlines Human Resources Department. *Id.* Managers Jennifer Romeo and Cancienne investigated. (D.E. 87 at 28–29.) Richardson asked Human Resource managers to remove Cancienne from the investigation and assign someone else. (D.E. 87 at 29.) Her request was not granted. *Id.* Following the investigation, Richardson received a written warning while Johnson received a verbal warning. (D.E. 87 at 29–30.) Richardson filed a grievance with her union. (D.E. 87 at 29.) At the conclusion of the grievance process, Richardson's written warning was reduced to a verbal warning. (D.E. 77-1 at 38.)

Richardson filed an internal complaint following an altercation with an African American co-worker, Yahya Muldrow, in September 2015. (D.E. 87 at 31.) Muldrow, a ramp agent, approached Richardson in the service center and asked for her help with a personal reservation. (D.E. 87 at 30.) According to a statement by Muldrow's supervisor, Muldrow took offense that Richardson asked him about attending the "million man march" and the conversation became heated. (D.E. 77-1 at 47.) As Muldrow was leaving, he told Richardson to "shut up," pushed her in the arm, and exclaimed "you acting white, sister!" (D.E. 77-1 at 44 and 46; D.E. 87 at 30.) After an investigation, Muldrow received a written warning. (D.E. 77-1 at 47.)

4

When Richardson came across a disabled, disheveled passenger lost in the airport in November 2015, she guided him back to the service center so that she could assist him. (D.E. 87 at 31–32.) There she was able to calm him down and work on booking him a new flight. (D.E. 90-6 at 25.) Houston Police were dispatched and arrested the passenger for trespass. (D.E. 87 at 42.) Richardson contends that United Airlines managers contacted the police to initiate the arrest and then spread rumors that Richardson was responsible for the police involvement. (D.E. 87 at 32.) Richardson reported the incident to Pinto and filed a complaint with her union. (D.E. 87 at 31.)

On December 14, 2015, supervisor Hernandez gave Richardson a direct order to use a handheld device during the night shift. (D.E. 87 at 33; D.E. 90-6 at 13.) According to United Airlines, Hernandez also ordered Richardson to move to the front workstations of the customer service center but Richardson refused. (D.E. 77 at 20.) Richardson denies that she refused a direct order. (D.E. 77-2 at 13; D.E. 87 at 34; D.E. 10 at 8.) Supervisors Mark Gruver and Hernandez called Richardson in to an office to discuss the incident. (D.E. 77-2 at 13.) A union representative was also present. *Id.* There, Gruver gave Richardson a direct order to sit in a particular area of the Terminal B South Service Center workstation. (D.E. 90-6 at 13.) According to United Airlines, Gruver asked if Richardson would comply with his direct order and she replied "no, I will not comply with that direct order." (D.E. 77-

5

1 at 65.) Gruver told her that if she did not follow a direct order, that he would have to take her badge and keys and escort her off the premises. (D.E. 77-2 at 14.) United Airlines alleges that Gruver further explained that the company would launch an investigation and if Richardson was found insubordinate, she could be terminated. (D.E. 77-1 at 65.) After asking her again if she would comply with the direct order, United Airlines says Richardson replied "no, I will continue to sit in the area I always have." *Id.* Richardson denies that she refused a direct order. (D.E. 77-2 at 13; D.E. 87 at 34; D.E. 10 at 8.) She was escorted off the property. (D.E. 87 at 34.) United Airlines conducted an investigation and subsequently terminated her employment. *Id.*

Richardson filed a complaint with the EEOC in May 2016. (D.E. 90-2 at 20.) She then filed this lawsuit in May 2018. (D.E. 1.)

## II.   SUMMARY JUDGMENT

### A. Legal standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael*

*v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If this burden is met, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Conclusory allegations and unsubstantiated assertions are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Lincoln General*, 401 F.3d at 350. Still, the nonmovant must "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 273 (5th Cir. 2009) (quoting *Smith ex. rel. Estate of Smith v. United States*, 39 F.3d 621, 625 (5th Cir. 2004)). "Nor is the 'mere scintilla of evidence' sufficient; 'there must

be evidence on which the jury could reasonably find for the plaintiff.'" *Liberty Lobby*, 477 U.S. at 252. "A party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario." *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 541 F. App'x 443, 447 (5th Cir. 2013).

## B. Deficiencies in Richardson's summary judgment evidence

"The filings of a pro se litigant are to be liberally construed" and are held to less stringent standards than attorney-drafted filings. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). Still, all litigants must comply with the rules governing federal courts, including the requirement to present proper summary judgment evidence. *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014); *see Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 364–65 (5th Cir. 2006). "In response to a summary judgment motion, a litigant, whether pro se or represented, has the duty to present to the district court the evidence that creates a genuine issue of material fact." *Perez v. Johnson*, No. 96-20135, 1997 WL 464599, at *1 (5th Cir. July 31, 1997). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Matthews v. Pilgrim's Pride*, No. 18-40984, 2019 U.S. App. LEXIS 23602, at *4 (5th Cir. Aug. 7, 2019) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)).

This court has endeavored to be fair to Richardson as a pro se litigant but cannot disregard the Federal Rules of Civil Procedure or the Federal Rules of Evidence. During several pre-trial hearings, the court gave Richardson a lengthy tutorial on her burden in responding to the motion for summary judgment. (D.E. 72 Motion Hearing Aug. 15, 2019; D.E. 72 Motion Hearing Sept. 11, 2019.) The court also granted Richardson's request for additional time to respond to the motion for summary judgment.

Richardson filed a sixty-one page opposition to the motion for summary judgment. Then, after the deadline passed and United Airlines replied, she filed a 416-page supplemental brief without leave. Many of the documents cited in both responses are inadmissible as conclusory, argumentative, speculative, and without foundation. Further, the 416-page filing includes full depositions and unsworn statements never referred to in Richardson's forty-nine page memorandum or thirty-one page declaration.

It is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). However, because Richardson is pro se and because the allegations in this case are serious, the court has endeavored to scour the record for evidence favorable to her case. Thus, the court will not disregard Richardson's evidence for purposes of its summary judgment analysis. Yet even if Richardson

could "overcome all evidentiary hurdles," the court still finds that she has not shown the existence of a genuine issue of material fact. *See Williams v. The Thrift Store*, No. 4:14CV101, 2015 WL 5578322, at *3 (E.D. Tex. Sept. 22, 2015) (finding that even if pro se litigant's evidence was not unauthenticated hearsay, she still failed to create a genuine issue of material fact to defeat defendant's motion for summary judgment); *Southern Distrib. Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978) ("Despite the numerous depositions taken and the voluminous documentary evidence obtained by plaintiffs in discovery procedures, they have not mustered the substantial evidence required to defeat summary judgment.").

## III.   MOTIONS TO STRIKE

United Airlines moves to strike unauthenticated and unsworn statements and to suppress uncertified deposition transcripts and evidence from sealed records presented in Richardson's responses to the summary judgment motion. (D.E. 88; D.E. 91.) United Airlines objects to Richardson's assertions as irrelevant, prejudicial, and inconsistent with pleadings. The company labels many of her statements as impermissible conclusions and hearsay. Ignoring the evidentiary problems and taking into consideration all of Richardson's allegations and evidence, her claims still fail. Thus, the court DENIES the motions to strike as MOOT.

## IV.    TITLE VII & 42 U.S.C. § 1981

Richardson raises discrimination claims under both Title VII and 42 U.S.C. § 1981. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides a remedy against racial discrimination in private employment. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976). "When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 410 n.2 (5th Cir. 1999). Because the statutory basis in Richardson's Title VII and § 1981 claims function identically, the court analyzes them as one. *Id.*

### A. Employment Discrimination

Richardson asserts that United Airlines subjected her to unlawful racial and gender discrimination. To survive a motion for summary judgment, she must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a prima facie case is established, the defendant must provide the court with a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. *Id.* If the employer does so, the plaintiff has the burden to raise a genuine issue of material fact that the defendant's

11

provided reason is mere pretext for unlawful discrimination. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). "The ultimate burden of persuasion rests with the plaintiff." *Id.* at 622.

### 1. Prima Facie Case

"A prima facie case requires a showing that the plaintiff (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was treated less favorably than other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Anderson v. Venture Express*, 694 F. App'x 243, 246 (5th Cir. 2017). Because Richardson is an African American woman who was terminated from a position she was qualified for, she has met the first three elements to establish a prima facie case. The parties disagree on whether Richardson can establish a similarly situated comparator who was treated less favorably for disobeying a direct order.

"A comparator will be considered similarly situated to the plaintiff if the two held the same job responsibilities; worked for the same supervisor or had their employment status determined by the same person; had essentially comparable violation histories; and critically, where the plaintiff's conduct that drew the adverse employment decision was nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Moore v. Univ. Miss. Medical*

*Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (internal citations omitted). The conduct of both the plaintiff and the proposed comparator must have been "nearly identical." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Here, Richardson asserts that customer service agent Sergio Garcia is a comparator, claiming that he disobeyed a direct order from manager Jim Fuerstenberg but was not terminated. (D.E. 87 at 34–35.) Although Richardson maintains the burden to establish that Garcia is similarly situated, she does not provide any information to establish Garcia is a proper comparator or to demonstrate that their conduct was nearly identical. According to Richardson's deposition, several United Airlines employees told her that, in February 2016, Fuerstenberg asked Garcia to move seats in the Terminal B Service Center, that Garcia said no, and that no disciplinary action was taken against Garcia. (D.E. 77-2 at 6–8.) During her deposition, Richardson was questioned as follows:

> Q: Do you know if Jim Fuerstenberg told Sergio Garcia, "I'm giving you a direct order," and used those words?
> A: No.
>
> Q: Do you know if Jim Fuerstenberg told Sergio Garcia, "I'm giving you a direct order and if you don't comply, the consequences may include employment termination"?
> A: No.

(D.E. 77-2 at 8.) Richardson refers to a second employee that she feels disobeyed a direct order but was not subject to termination. (D.E. 87 at 35.) However, she provides no evidence to support her claim. United Airlines established that

Richardson was terminated for disobeying a direct order. Because Richardson has not demonstrated that her proposed comparators disobeyed a direct order, she has not met her burden to establish either as a comparator. (D.E. 77-2 at 8.)

Therefore, Richardson has not produced the evidence required to meet her burden and has not established a prima facie claim of employment discrimination.

## 2. Legitimate, Nondiscriminatory Reason

Assuming, in the alternative, that Richardson can establish a prima facie case of discrimination, the question then becomes whether United Airlines has presented a legitimate, nondiscriminatory reason for her termination. United Airlines's burden is one of production, not persuasion, and it may meet this burden by producing admissible evidence of a nondiscriminatory reason for Richardson's termination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).

United Airlines states that it fired Richardson for disobeying a direct order. As evidence of this nondiscriminatory reason, United Airlines presents the following:

- an email from Kathy Page of United Airlines Human Resources department (D.E. 77-1 at 62–63);
- an email from Hernandez describing the December 14, 2015 incident (D.E. 77-1 at 65);
- an Investigative Review Meeting notification sent to Richardson to inform her of a December 31, 2015 hearing (D.E. 77-1 at 67–68);
- a letter sent to Richardson dated January 11, 2016, from the area manager of United Airlines, summarizing the December 31, 2015 investigatory review hearing (D.E. 77-1 at 69–70); and

14

- a letter dated August 23, 2016, from United Airlines Human Resources to Richardson detailing the July 29, 2016 hearing proceedings. (D.E. 77-1 at 71–75.)

These documents all state that Richardson was terminated because she refused to follow a direct order.

United Airlines has presented evidence of a legitimate, nondiscriminatory reason for Richardson's termination and thus has satisfied its burden of production.

### 3. Pretext

Because United Airlines has presented a legitimate, nondiscriminatory reason for termination, Richardson has the burden to show that United Airlines's stated reason was merely pretext for racial or gender discrimination. She "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy." *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### a. Direct Evidence that Proffered Reason is false

"An explanation is false or unworthy of credence if it is not the real reason for adverse employment action." *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). If a plaintiff produces evidence that the employer's explanation is false, this may support an inference of discriminatory motive. *Id.*

As discussed above, United Airlines presented numerous documents and written testimonial accounts of December 14, 2015, all stating that Richardson

15

disobeyed a direct order. Richardson states several times that United Airlines's explanation is false. (D.E. 10 at 8; D.E. 87 at 1, 7, 8, 34, 35, and 36; D.E. 90 at 1, 8, 39, 40, 45, and 48; D.E. 90-6 at 7, 8, and 26.) Although she has the burden to produce summary judgment evidence that United Airlines is mistaken, she points only to her own uncorroborated statements.

Richardson's declaration and deposition essentially corroborate the stories of multiple United Airlines personnel. Richardson admits that Hernandez gave her a direct order to use a specified handheld device during the night shift. (D.E. 87 at 33; D.E. 90-6 at 13.) She also admits that Hernandez discouraged her from sitting on the left side of the workstations in the service center that night. (D.E. 90-6 at 11.) During her deposition, Richardson stated that Hernandez told her to follow Hernandez and Gruver into an office. (D.E. 77-2 at 13.) At that point, Richardson called shop steward Tony Colina to join them. *Id.* Richardson agrees that while in the office, Gruver again explained that "they deliberately pushed the chairs away from the computers . . . to keep [Richardson] from sitting there." *Id.* She agrees that Gruver discussed Hernandez's direct order not to sit in the side chairs when there were front chairs available. *Id.* After telling Gruver that Hernandez did not give that direct order, she admits that Gruver "said he was giving [her] that directive":

> Q: Okay. So at some point Mark Gruver used the term "direct order"?
> A: Yes.
>
> . . . .

Q: Your testimony is that he told you, "Quinn, if you don't follow a direct order, I'm going to have to take your badge and keys"?

A: Yes.

Q: Okay. Did he follow up with saying, "We're going to conduct an investigation after we take your badge and keys"?

A: He said that in regard to—he was going to have to hold me out—well, they were going to have to take me off, like they escorted me out, and he was going to have to get back in contact with me regarding it, is what he said.

(D.E. 77-2 at 14.) Richardson confirms virtually every aspect of United Airlines's account of events except her refusal of a direct order.

Richardson attached to her response to the motion for summary judgment the depositions of Gruver and Hernandez, who both corroborated United Airlines's position. (D.E. 90-2 at 24–57; D.E. 90-3 at 26–89.) She has not provided any statements or evidence of employees who might have corroborated her assertion that she did not disobey a direct order. She does not mention if anyone overheard her conversation with Hernandez in the service center. She says that Tony Colina, a union representative, was present at the meeting with Hernandez and Gruver but did not depose him or offer a declaration from him.

Because Richardson did not introduce evidence other than her uncorroborated, bare denial to contradict United Airlines's stated reason for termination, she did not meet her burden. "Absent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason for the discharge." *Guthrie v. Tifco Industries*, 941 F.2d 374, 378 (5th Cir. 1991); *see Scott v. Harris*,

550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Her conclusions and denial of the stated reason are not direct evidence of discriminatory motive.

### b. Circumstantial Evidence of Discriminatory Motive

Richardson's ultimate burden is to establish that United Airlines intentionally discriminated against her. *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012). She may provide circumstantial evidence to do so, but her "burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence." *Lewis v. Continental Airlines*, No. H-06-1707, 2008 WL 11499209, at *2 (S.D. Tex. Feb. 5, 2008) (concluding that a plaintiff's subjective belief of discrimination does not create an inference of discrimination); *see Jacobs v. Walgreen Co.*, No. H-17-2854, 2018 WL 6725392, at *2 (S.D. Tex. Dec. 21, 2018) (finding no evidence of pretext despite the plaintiff's claims that employer treated others better, without evidence of how they were treated differently).

### i.   Evidence of Racial Animus

Richardson's complaint alleges numerous incidents which she perceived to be based upon discriminatory motives. Yet, despite the volume of her filings, she

presents little to no evidence to support these accusations. During her deposition, when Richardson was first asked how she knew that United Airlines employees were racially motivated against her, she replied "by what happened, what transpired." (D.E. 77 at 50.) Upon further questioning, Richardson stated that United Airlines "didn't do it to anyone else that was white." *Id.* Richardson thus relies merely on speculation and her subjective belief that United Airlines was motivated by racial animus. Without actual evidence of this motivation, Richardson has not met her burden of proof.

### ii. Disparate treatment

A plaintiff may show an employer's discriminatory motives with evidence of disparate treatment. *Little v. Republic Refining Co.*, 924 F.2d 93, 96–97 (5th Cir. 1991). To establish disparate treatment, Richardson must show that United Airlines gave preferential treatment to employees outside of the protected class under "nearly identical" circumstances. *Id.* The court has already found that Richardson did not produce sufficient evidence of similarly situated employees treated more favorably in nearly identical circumstances. *See supra* Part IV.A.2. Therefore, she has not established a discriminatory motive through disparate treatment.

### iii. Anecdotal Evidence

"A plaintiff in Title VII discrimination cases can introduce anecdotal evidence of discrimination against other employees to establish that a defendant's reasons are

a pretext for discrimination." *Jackson v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 172 F. Supp. 2d 860, 878 (S.D. Tex. 2001), *aff'd*, 54 F. App'x 404 (5th Cir. 2002). To be admissible, the employees must be similarly situated to the plaintiff. *Id.*

Richardson asserts that several African American employees were targeted by United Airlines management because of their union grievances and complaints of racism, retaliation, harassment, and working conditions. (D.E. 90 at 4.) She offers the sworn statement of Geri Gardley as an example of a similarly situated co-worker with similar discriminatory complaints. (D.E. 87 at 4.) However, Gardley was employed as a team lead, while Richardson worked as a customer service agent. *Id.* Because the two women had different job titles and responsibilities, they are not similarly situated.

Alternatively, if Gardley was a similarly situated employee, her statement is not enough. Gardley's statement claimed that she asked to leave work early because she was still recovering from surgery and did not feel well. (D.E. 87 at 40.) She alleges that Cancienne first asked if she was a drug addict and told Gardley that she looked "like a junkie" before authorizing her leave. (D.E. 87 at 40–41.) Gardley states that she "felt" Cancienne was disrespectful to her because she reported two other employees for making racist comments but does not otherwise connect the two incidents. (D.E. 41.) *See Body by Cook, Inc. v. State Farm Mutual Automobile Insur.*, 869 F.3d 381, 387 (5th Cir. 2017) (concluding that generalized allegations that fail

20

to identify specific instances of discrimination do not establish discriminatory intent). Therefore, Richardson has not introduced admissible anecdotal evidence.

Richardson strongly believes that her termination is connected to perceived discrimination. However, "an employee's subjective belief that [s]he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1130 (5th Cir. 1996). Richardson has not established a genuine issue of material fact as to United Airlines's discriminatory intent and the court recommends that United Airlines's motion for summary judgment be GRANTED.

## B. Retaliation

Title VII prohibits retaliation against persons who oppose unlawful employment practices or participate in an investigation or hearing under the statute. 42 U.S.C. § 2000e-3(a); *see Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). The *McDonnell Douglas* analysis applies, and an inference of retaliation is created once the plaintiff demonstrates a prima facie case of retaliation. *Shackelford*, 190 F.3d at 408. After the employer produces a legitimate, nondiscriminatory reason for adverse employment action, the inference of retaliation is destroyed unless the plaintiff shows that "the adverse action would not have occurred 'but for' the employer's

21

retaliatory motive." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 241–42 (5th Cir. 2019).

## 1. Prima Facie Case

"A plaintiff establishes a prima facie case of retaliation by showing (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shackelford*, 190 F.3d at 407–08.

### a. Protected Activity under Title VII

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (citing *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). "[A] vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Independent School Dist.*, 448 F. App'x. 485, 493 (5th Cir. 2011) (collecting cases).

Richardson states that she filed a complaint alleging discrimination during the investigation of the Ellen Johnson incident in August 2015. (D.E. 10 at 6; D.E. 87 at 29.) Her response to the summary judgment motion asserts that managers Romeo,

Cancienne, and Pinto discriminated against her during this investigation. (D.E. 87 at 28.) Richardson produced her union grievance form as evidence of this complaint. (D.E. 90-2 at 22.) The complaint states that Richardson followed the company's guidelines and believes that she did not receive a fair and impartial investigation. *Id.* It does not reference any unlawful employment activity under Title VII and thus does not constitute protected activity. *See Moore v. United Parcel Svc., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (concluding that plaintiff was not engaged in protected activity because "his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII").

Richardson claims that she filed complaints against Cancienne after she had trouble renewing her security badges. (D.E. 87 at 25.) She also states that she filed a complaint against Pinto because of his "no-care attitude" about the "workplace violence with one of his agents." (D.E. 87 at 31.) Again, she does not specify any racial or gender-motivated conduct. She describes these vague complaints in a general sense, stating that she complained about "intimidations, accusations, harassments, lies, [and] retaliations." (D.E. 87 at 2, 3, and 9.) Because these grievances did not oppose an employment practice under Title VII, they do not constitute protected activity for purposes of Richardson's retaliation claim.

Richardson states that she filed discrimination claims against United Airlines at the EEOC in 2010, 2011, and 2016. (D.E. 90-2 at 21.) These three EEOC charges

23

constitute protected activity. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007).

Thus, Richardson has provided evidence to establish that only her EEOC charges amount to protected activity.

### b. Adverse Employment Action

Adverse employment actions include only ultimate employment decisions such as "hiring, granting leave, discharging, promoting, and compensating." *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003). "Title VII does not, however, address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). The significance of an action "will often depend upon the particular circumstances. Context matters." *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 332 (5th Cir. 2009) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). The question is whether the action is materially adverse and produces injury or harm. *Burlington*, 548 U.S. at 67–71 (holding that a jury could find an employer's reassignment of duties to be materially adverse due to evidence that reassigned duties were "more arduous and dirtier" and required less qualifications and prestige than the previously-held duties); *cf. Coffman v. Alvin Community College*, 642 F. App'x 472, 478–79 (5th Cir. 2016) (finding no actionable adverse action by employer's abatement of

internal grievance because the plaintiff "did not suffer any permanent or serious alteration in her employment" as a result).

The adverse employment actions that Richardson alleges are: accusations that she was responsible for a passenger's arrest in November 2015; her suspension and written warning discipline following the August 2015 incident with Ellen Johnson; and the December 2015 situation that led to her termination. (D.E. 87 at 36.)

Richardson claims that several managers "conspired and falsely implicated" her in a disabled man's arrest in November 2015. (D.E. 87 at 32.) Richardson does not tie this speculation to any ultimate employment decisions or show that it had any impact on her employment at all. Therefore, this does not constitute an adverse action.

Richardson also claims that her suspension and written warning discipline in August 2015 constitute adverse employment action. Reviewing the circumstances as a whole, the written warning discipline and temporary, paid suspension "would not have dissuaded a reasonable worker from making or supporting a charge of discrimination." *DeHart*, 214 F. App'x at 442. In fact, Richardson filed a complaint following this reprimand, alleging disparate treatment because Ellen Johnson received a less serious, verbal warning for her participation in the same incident. (D.E. 87 at 29; D.E. 77-1 at 35–36.) Based on subsequent hearings, director Tonya Patterson reduced Richardson's discipline from a written warning to a verbal

warning in November 2015, which was more on par with Jackson's punishment. (D.E. 77-1 at 38.) Richardson does not allege that this complaint or subsequent decision had any negative impact on her employment, nor does she provide any facts that could be construed as such. *See Higbie v. Kerry*, 605 F. App'x 304, 310–11 (5th Cir. 2015) (holding that "the mere fact" that an adverse action happened did not create a fact issue for an actionable claim because the plaintiff did not demonstrate that the adverse action actually impacted the plaintiff's day-to-day duties).

For its analysis, the court finds that only Richardson's termination in December 2015 constitutes an adverse employment action.

### c. Causal Link

The final element of a prima facie claim for retaliation requires Richardson to establish a causal link between her EEOC claims and her termination, which may be met if she can show that the two "were not wholly unrelated." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42–43 (5th Cir. 1992) (finding causation where supervisor mentioned the plaintiff's EEOC complaint to her at least twice per week until her termination).

Courts have also looked at the timing between the protected activity and the adverse action and have generally found that if the two did not take place within a few months of each other, the timing was not close enough to establish causation. *See Garcia*, 938 F.3d at 243 (determining that two-and-one-half-months is sufficient

for causation finding); *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that three months was insufficient for a causation finding). Richardson says that she filed EEOC charges while employed with United Airlines in November 2010 and April 2011. (D.E. 90 at 2; 90-2 at 21.) She was terminated in December 2015, several years after her EEOC charges. Her third EEOC charge was filed in May 2016, after the adverse employment action, and thus is not considered. (D.E. 90-2 at 21.)

"Moreover, in evaluating causation the focus must be on the final decisionmaker, that is, the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct." *Everett v. Central Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011). Richardson produced the depositions of both Gruver and Hernandez and both supervisors denied knowledge of Richardson's prior discrimination complaints. (D.E. 90-2 at 29; 90-3 at 48–49.) She has not established that any decisionmakers were aware of her EEOC charges.

Richardson has failed to satisfy her burden of providing a prima facie claim of retaliation because she has not provided summary judgment evidence of a causal link between the protected activity and adverse employment action.

## 2. Legitimate, Nondiscriminatory Reason

Alternatively, if Richardson could establish a prima facie claim of retaliation, the question then becomes whether United Airlines has presented a legitimate, nondiscriminatory reason for her termination. The court has determined that Richardson's refusal of a direct order is a legitimate, nondiscriminatory reason for her termination.

## 3. Pretext

The burden shifts back to Richardson to demonstrate that United Airlines's nondiscriminatory reason for termination is pretextual. "An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." *Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 F. App'x 328, 333 (5th Cir. 2014). A plaintiff may establish but-for causation if she produces evidence that (1) her supervisor, motivated to retaliate, intended to cause an adverse employment action and (2) the supervisor's actions were the but-for cause of the adverse action. *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015). "In order to avoid summary judgment, [a plaintiff] must show a conflict in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity." *Hague*, 560 F. App'x at 336 (internal quotation marks omitted).

Richardson has not shown that any supervisors were motivated to retaliate against her. She provided the depositions of supervisors Hernandez and Gruver, who both deny any knowledge of Richardson's protected activities. Although she insinuates that Cancienne orchestrated her termination, she does not provide any evidence suggesting that he was aware of her protected activities.

Richardson has also not shown that she would not have been terminated absent discrimination. She was fired for refusing an order, as discussed above in Part IV.A.2. Richardson has not offered any contrary evidence and instead relies on conclusory statements and speculation. She has failed to show that she would not have been terminated in December 2015 but for her EEOC claims in 2010 and 2011.

Thus, Richardson has not shown a genuine issue of material fact relating to her retaliation claim and the court recommends that United Airlines's motion for summary judgment be GRANTED.

## C. Hostile work environment

Richardson also claims that she was subjected to a hostile work environment. To establish a Title VII hostile work environment claim, the plaintiff must show that she (a) is a member of a protected group; (b) was subjected to unwelcome harassment; (c) the harassment complained of was based on her membership in the protected group; (d) the harassment complained of affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the

29

harassment in question and failed to take prompt remedial action. *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir. 2014).

Richardson is a member of a protected group and claims that she was subjected to unwelcome harassment. Assuming, for analysis purposes, that Richardson was subjected to harassment, the court must first determine if the harassment was based on Richardson's race or gender.

### 1. Basis of Harassment

Although a wide range of conduct can make a workplace uncivil, for a plaintiff to establish a Title VII claim the conduct must be based on an individual's race, color, religion, sex, or national origin. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652 (5th Cir. 2012); 42 U.S.C. § 2000e-2(a)(1). The basis of harassment may be established through concrete examples of racial discrimination or animus. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). "Poor treatment without more is not sufficient to show harassment based on race, even if [the plaintiff] believes race to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 356 (5th Cir. 2017).

Richardson repeatedly refers to harassment, racist conduct, and discriminatory acts but does not provide factual or specific examples of that conduct. (D.E. 87 at 2, 3, 4, 5, 7, and 9.) Richardson describes several instances where she felt an employee's behavior was "disrespectful" or "unprofessional" including an

altercation with a co-worker in February 2015 (D.E. 87 at 21–23) and an incident with an unruly passenger in April 2015. (D.E. 87 at 26–27.) She complains that Cancienne spoke to her "in a demeaning tone" but does not present any evidence that he harassed her due to her race or gender. (D.E. 87 at 25.)

In Richardson's thirty-page declaration, she states over fifteen times that United Airlines employees subjected her to discrimination. Throughout these thirty pages, the specific allegations to support her conclusory statements are:

- Supervisor Gruver told Richardson that he could watch her working at the Terminal B South Service Center anytime. Richardson told Gruver, Hernandez, and Colinas that this comment made her feel sexually violated (D.E. 90-6 at 14);
- The investigation into the Ellen Johnson incident included what Richardson called "a deplorable, racially-charged demonstration depicting Jim Crow Laws" wherein supervisors told her "to move off sidewalk when [she] see[s] a white woman coming towards [her]" (D.E. 90-6 at 18);
- During the same investigation, Richardson states that she was described as the "Black lady with kinky hair"; and
- In September 2015, employee Muldrow told Richardson that she was "acting more white than those white customers." (D.E. 90-6 at 22.)

Of these examples, Richardson only asserts specific details related to a protected class in her recollection of the Ellen Johnson investigation. However, Richardson failed to provide summary judgment evidence to support her allegation. The parties produced two different emails that Richardson sent to United Airlines following the investigation on August 3, 2015. (D.E. 77-1 at 33; D.E. 90-5 at 12.) Although Richardson sent these emails the day after the investigation, in neither one

31

does she mention the "deplorable, racially-charged demonstration" that her court filings describe. *Id.* Instead, the emails ask for an explanation of her suspension and complain that Cancienne accused her of non-compliance because she did not answer his question and did not draw a diagram of the service center. *Id.* Richardson's declaration also lists the people present during this investigation, including employees Dawn Watson and Gabriel Hernandez, supervisors Cancienne, Romeo, and Pinto, and union representatives Colinas and Belinda Hawkins. (D.E. 90-6 at 16.) However, Richardson has not provided documentation or even asserted that any of these individuals may corroborate her allegations. In light of the evidence, Richardson has not demonstrated that she was subjected to harassment based on her membership in a protected group.

## 2. Term of Employment

"For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Factors to consider in determining if conduct is severe or pervasive may include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Id.*; *see Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012) (finding no hostile work environment despite allegations of sporadic, offensive remarks, absent plaintiff's explanation of how those remarks interfered with his job performance); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995) (concluding that four derogatory references to the plaintiff during two-and-a-half years was insufficient to support a claim of hostile work environment). To be actionable, a plaintiff must establish that a reasonable person would also find the conduct hostile or abusive. *Yellow Transp.*, 670 F.3d at 651 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). An environment may be perceived as hostile if it demonstrates "a communal effort to define who is welcome in the workplace." *Butler v. Yselta Independent School Dist.*, 161 F.3d 263, 269–70 (5th Cir. 1998) (finding that public circulation of pornographic materials in the workplace "mark[ed] the workplace as an area in which masculinity is appropriate or even constitutive"); *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) (finding employer's routine use of racial slurs to demean African American employee until employee felt forced to resign).

Richardson has not presented any evidence that the described conduct interfered with her job performance.

33

Because Richardson has not demonstrated conduct that the court can construe as so severe or pervasive to have affected a term, condition, or privilege of her employment, she cannot establish the third element of her hostile work environment claim.

### 3. Knowledge and Remedial Action

To survive an employer's motion for summary judgment on a hostile work environment claim, a plaintiff must also point to specific facts in the record that demonstrate the company knew or should have known about harassment. *Yellow Transp.*, 670 F.3d at 654. A plaintiff may assert that an employer has actual knowledge or, if the harassment is pervasive, constructive knowledge. *Id.* "Whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Williams-Boldware*, 741 F.3d at 641. Prompt remedial action is determined by a thorough investigation and immediate implementation of discipline based on those results. *Waymire v. Harris Cty., Tex.*, 86 F.3d 434, 428 (5th Cir. 1996).

Even if Richardson's examples *could* be construed as harassment based on gender or race, and even if Richardson proved that they affected a condition of her employment, she cannot show that United Airlines knew of harassment but failed to take prompt remedial action.

Richardson did not produce evidence to show that she informed United Airlines about racially inappropriate conduct during the Ellen Johnson investigation. She describes submitting complaints and grievances to both United Airlines and her union on prior occasions for different incidents and even submitted two emails the day after the Ellen Johnson investigation. Still, neither email mentioned the "racially-charged demonstration depicting Jim Crow Laws" she describes in her declaration. (D.E. 90-6 at 18.) The record does reflect that in situations where United Airlines did have actual knowledge of harassing conduct, the company took prompt remedial action:

- Richardson has stated several times that Ellen Johnson was punished for the August 3, 2015 incident. (D.E. 90-6 at 19; D.E. 90 at 36; D.E. 87 at 30.)

- Richardson filed a complaint on August 25, 2015 with her union regarding the perceived unfair treatment she faced during the Ellen Johnson investigation. (D.E. 87 at 29; D.E. 90-2 at 22; D.E. 77-1 at 35.) The required three-step grievance process was implemented and concluded by November 24, 2015. (D.E. 77-1 at 38.)

- On September 29, 2015, United Airlines issued disciplinary action against Muldrow for his behavior following his altercation with Richardson on September 20. (D.E. 90-6 at 39–40.)

Thus, Richardson has not presented sufficient summary judgment evidence to show the existence of a hostile work environment claim under Title VII.

## V.   CONCLUSION

The summary judgment record does not raise any genuine issue of material fact as to Richardson's claims of discrimination, retaliation, and hostile work

environment. Accordingly, this court recommends that United Airlines's motion for summary judgment be GRANTED.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed on October 31, 2019, at Houston, Texas.

Peter Bray
United States Magistrate Judge

36